UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| TRAH'YON BENNETT, | : | |
| Plaintiff, | : | Civ. No. 22-7003 (KM) (MAH) |
| v. | : | |
| | : | **OPINION** |
| OSCAR AVILES, | : | |
| Defendant. | : | |

**KEVIN MCNULTY, U.S.D.J.**

Pro se plaintiff Trah'yon Bennett, a pretrial detainee at the Hudson County Correctional Facility ("HCCF"), seeks to commence a lawsuit pursuant to 42 U.S.C. § 1983 stemming from his alleged exposure to the COVID-19 virus at HCCF. Bennett also moves to proceed *in forma pauperis* ("IFP"). DE 1-1. For the reasons below, Bennett's motion to proceed IFP is granted, and his complaint is dismissed without prejudice.

  **A.**  **Factual Allegations**

The complaint contains the following factual allegation:

> Failed to establish a covid-19 policy during this deadly pandemic and as a result creating cruel and unsanitary conditions in various ways that put my life and health at risk.

DE 1 at 4.

It is not clear against whom Bennett's claim is asserted. In the caption, Bennett names HCCF as a defendant (*id.* at 1), but in the body of the complaint he names "Oscar Aviles, acting warden." *Id.* at 4. The complaint contains no other allegations, except that Bennett refers to another civil action in this district, filed more than two years ago, shortly after the onset of the pandemic, and on behalf of inmates in a different jail, in which he alleges that a preliminary

injunction was granted. *Id.* at 5. He purports to proceed under 42 U.S.C. § 1983 and seeks "any and all damages deemed fit by the courts for cruel conditions, health issues mental conditions that jeopardize my life as well as my health." DE 1 at 6. Bennett also alleges in his IFP motion that he "was transported to [HCCF] 6-16-22 to unsanitary conditions and tested positive for covid 8-9-22 to 8-25-22." DE 1-1 at 2.

**B.     IFP**

The Prison Litigation Reform Act of 1995, Pub. L. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (Apr. 26, 1996) (the "PLRA"), establishes requirements for prisoners who are attempting to bring a civil action IFP. Specifically, a prisoner seeking to file a civil action IFP must submit an affidavit, including a statement of all assets, stating that the prisoner is unable to pay the fee. 28 U.S.C. § 1915(a)(1). The prisoner also must submit a certified copy of his inmate trust fund account statement for the six-month period immediately preceding the filing of his complaint. 28 U.S.C. § 1915(a)(2). Here, Bennett has complied with the PLRA's requirements and demonstrated indigence. DE 1-1. Accordingly, IFP status is appropriate, and Bennett's IFP motion is granted.

**C.     Screening**

The PLRA requires district courts to review complaints in civil actions filed by prisoners, *see* 28 U.S.C. § 1915A(a), and to dismiss any case that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b) & 1915(e)(2)(B). "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d

220, 223 (3d Cir. 2000)). That standard is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

To survive the court's screening for failure to state a claim, the complaint must allege "sufficient factual matter to show that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation and internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Pro se pleadings, as always, will be liberally construed. *See Haines v. Kerner*, 404 U.S. 519 (1972). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

**D.    Applicable Law**

Construing Bennett's complaint liberally as I must, he appears to proceed under 42 U.S.C. § 1983 and to attempt to allege that the conditions of confinement at HCCF violated his constitutional rights. *See* DE 1 at 4 (alleging that failure "to establish a covid-19 policy" created "cruel and unsanitary conditions in various ways"). He seeks to hold either HCCF or Aviles liable for failing to enact policies that sufficiently protected him from the risk of contracting COVID-19. DE 1 at 1 (naming HCCF as defendant); *id.* at 4 (naming Aviles as defendant).

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to

3

> be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. Thus, to state a claim under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (citations omitted).

The Due Process Clause of the Fourteenth Amendment affords protections to pretrial detainees "at least as great as the Eighth Amendment protections available to a convicted prisoner." *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983); *see also Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003). Due process or Eighth Amendment standards may be violated when a pretrial detainee is subjected to punishment unrelated to a legitimate governmental objective. *See Hubbard v. Taylor*, 538 F.3d 229, 236 (3d Cir. 2008). The Eighth Amendment requires prison officials to provide humane conditions of confinement. *See Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 256 (3d Cir. 2010); *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "For the conditions of confinement to rise to the level of an Eighth Amendment violation, they must deny the 'minimal civilized measure of life's necessities.'" *Betts*, 621 F.3d at 256 (quoting *Farmer*, 511 U.S. at 835). Thus, "prison officials violate an inmate's Eighth Amendment rights when they deprive her of a single identifiable human need such as food, warmth, or exercise." *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 226 (3d Cir. 2015); *see also Betts*, 621 F.3d at 256 (inmates must receive "adequate food, clothing, shelter, and medical care," and prison officials must "take reasonable measures to

4

guarantee the safety of inmates"). A "failure to provide minimally civil conditions of confinement to pre-trial detainees violates their rights against punishment without due process of law." *Roman v. DeMarco*, No. 18-8010, 2019 WL 452736, at *2 (D.N.J. Feb. 5, 2019) (citing *Reynolds v. Wagner*, 128 F.3d 166, 173–74 (3d Cir. 1997)).

"Unconstitutional punishment typically includes both objective and subjective components." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind." *Id.* (cleaned up). To meet the objective component, the conditions must "cause inmates to endure such genuine privations and hardship over an extended period of time, that the adverse conditions become excessive in relation to the purposes assigned to them." *Hubbard*, 538 F.3d at 233 (cleaned up). To meet the subjective component, a detainee must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety. *See Wilson v. Seiter*, 501 U.S. 295, 298–99 (1991).

A supervisor may not be held vicariously liable for the actions of subordinates. *See, e.g.*, *Chavarriaga*, 806 F.3d at 222. To adequately plead a plausible § 1983 claim against Aviles, Bennett must plead facts which, if proven, would show that Aviles was personally involved in the alleged wrongs. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207–08 (3d Cir. 1988). Bennett must plausibly allege, among other things, that Aviles enacted a policy, practice, or custom that was the "moving force" behind an alleged constitutional violation. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989); *see also Los Angeles Cnty. v. Humphries*, 562 U.S. 29, 35–36 (2010).

The Third Circuit addressed COVID-19 in the prison setting in *Hope v. Warden York County Prison*, 972 F.3d 310 (3d Cir. 2020), explaining that when evaluating a detention

5

facility's protocols, courts "must acknowledge that practical considerations of detention justify limitations on many privileges and rights," and "ordinarily defer" to the expertise of prison officials in responding to COVID unless there is "substantial evidence in the record that the officials have exaggerated their response" to the situation. *Id.*

### E. Analysis

As an initial matter, to the extent Bennett names HCCF in the caption as a defendant and seeks to assert a claim for money damages against it under § 1983, he may not do so because a jail is not a "person" within the meaning of § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Crawford v. McMillian*, 660 F. App'x 113, 116 (3d Cir. 2016) ("[T]he prison is not an entity subject to suit under 42 U.S.C. § 1983"); *Grabow v. Southern State Corr. Facility*, 726 F. Supp. 537, 538–39 (D.N.J. 1989) (correctional facility is not a "person" under § 1983). Accordingly, Bennett's § 1983 claim against HCCF (to the extent he intended to assert one) is dismissed.

Bennett's claim against Aviles, the warden, is also dismissed. Bennett's one-sentence allegation in the complaint—that conditions in HCCF are "cruel and unsanitary" due to a perceived lack of effective COVID-19 policy—is entirely conclusory and does not establish that Aviles is personally responsible for a policy resulting in the deprivation of Bennett's constitutional rights.

Likewise, Bennett's one-sentence allegation in his IFP application—that he tested positive for COVID—even if true, is insufficient to state a claim for unconstitutional conditions of confinement. Millions, of course, have contracted COVID both inside and outside of prison walls. Exposure alone does not establish that prison officials committed a constitutional violation. *See Hope*, 972 F.3d at 329 (rejecting notion that exposure to COVID-19 is per se

6

unconstitutional and that Government must eliminate risk of inmate exposure to comply with constitutional mandates). As Bennett provides no additional factual support for his § 1983 claim, the claim is dismissed for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii).

This is, however, an initial screening, and the Court cannot state that amendment would be futile. Accordingly, the dismissal is without prejudice. Bennett may file, within 60 days, a proposed amended complaint. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (leave to amend claims dismissed on screening should generally be granted unless amendment would be inequitable or futile). Any proposed amended complaint must comply with the pleading standards set forth above.

### F. Conclusion

For the reasons stated above, Bennett's motion to proceed IFP (DE 1-1) is granted, and his complaint (DE 1) is dismissed without prejudice. Bennett may file a proposed amended complaint within 60 days. An appropriate order follows.

Dated: December 23, 2022

/s/ Kevin McNulty
_____
KEVIN MCNULTY
United States District Judge